## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ ) | |
| **GILBERTO MORFIN-RODRIGUEZ,** ) | |
| ) | |
| **Petitioner,** ) | |
| ) | **Criminal Action No.** |
| **v.** ) | **05-40020-FDS** |
| ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Respondent.** ) | |
| _____) | |

## MEMORANDUM AND ORDER ON
## PETITION FOR WRIT OF HABEAS CORPUS

**SAYLOR, J.**

This is a petition under 28 U.S.C. § 2255 to vacate, set aside, or modify a sentence,

brought by a prisoner currently in custody under a sentence imposed by this Court.

On June 15, 2006, petitioner Gilberto Morfin-Rodriguez pleaded guilty pursuant to a plea

agreement to a three-count indictment.  The indictment charged : (1)  conspiracy to possess with

intent to distribute marijuana and cocaine, in violation of 21 U.S.C. § 846; (2) distribution and

possession with intent to distribute cocaine, in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C.

§ 2; and (3) distribution and possession with intent to distribute marijuana in violation of 21

U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  On January 12, 2007, this Court sentenced petitioner to

135 months of imprisonment, a sentence at the low end of the United States Sentencing

Guidelines range.  Despite a provision in his plea agreement stating that "[d]efendant agrees that

he will not . . . collaterally challenge any imprisonment sentence of 168 months or less," (_see_

Docket No. 424-3 at 4), he now challenges his sentence.

Petitioner alleges that his trial counsel was ineffective because he (1) failed to object when the Court allegedly inserted itself into plea negotiations; (2) failed to object to a conflict of interest allegedly created by the Court's prior professional relationship with counsel for the Government; (3) misrepresented his potential prison sentence by instructing him that he would receive the statutory minimum penalty if he cooperated during the Rule 11 conference; (4) and unreasonably stipulated to a four-point enhancement for a leadership role pursuant to U.S.S.G. § 3B1.1(a). Alternatively, he contends that the Court treated the Guidelines as mandatory, contrary to *United States v. Booker*, 543 U.S. 220 (2005), and its progeny.

For the reasons set forth below, the petition will be denied.

I. **Background**

On April 14, 2005, a grand jury returned an indictment charging that fourteen co-defendants participated in a conspiracy to possess marijuana and cocaine with intent to distribute, dating from approximately July 2004 until March 2005. The indictment also charged that several co-defendants, including Morfin-Rodriguez, possessed at least 500 grams of cocaine and at least 100 kilograms of marijuana with intent to distribute. (Docket No. 47 at 3-4).

The charges against Morfin-Rodriguez stemmed from his role in "organiz[ing] and le[ading] a drug trafficking organization in the Worcester area." (Docket No. 424-2 at 18). According to the Government's recitation of the factual basis at the change of plea—with which Morfin-Rodriguez expressly agreed (*see id.* at 20)—Morfin-Rodriguez and another individual "knowingly and intentionally arranged numerous cocaine and marijuana transactions with their own suppliers and with mid-level dealers, who were their customers." (*Id.* at 18). Those transactions included "transporting 355 pounds of marijuana from Arizona to Massachusetts" and

2

selling 100 pounds of marijuana on at least two occasions.  (*Id.* at 19).  The conspiracy involved a

total of 1,300.73 kilograms of marijuana, and 3.02 kilograms of a mixture of a substance

containing cocaine.  (*Id.*)

A Rule 11 conference was scheduled for June 15, 2006.  On that date, the parties

executed a plea agreement.  The plea agreement stated, in relevant part, that the parties agreed on

the "total drug weight attributable to [d]efendant," and that the weight involved resulted in a base

offense level of 32 under the applicable Guidelines.  (Docket No. 424-3 at 2).  The parties further

agreed to "take the position [at sentencing] that [d]efendant is subject to a four[-]level

enhancement under U.S.S.G. § 3B1.1(a), because he was the leader and/or organizer of criminal

activity involving five or more participants."  (*Id.*).  The Government agreed to recommend an

additional one-point reduction for acceptance of responsibility, *see* U.S.S.G. § 3E1.1(b), in

addition to the two-point reduction the parties agreed was warranted under U.S.S.G. § 3E1.1(a).

(*Id.* at 3).  The agreed-upon total offense level was therefore 33.  Because his criminal history

category was I, it produced a sentencing range of 135 to 168 months' imprisonment.  (Docket

No. 424-4 at 5).  Morfin-Rodriguez agreed that he would neither appeal "nor collaterally

challenge any imprisonment sentence of 168 months or less."  (Docket No. 424-3 at 4).

At the outset of the Rule 11 conference, the Court informed Morfin-Rodriguez that it had

previously worked with the Assistant United States Attorney assigned to the case.  The Court

stated:

> Before we proceed any further, there's a matter that I forgot to
> attend to.  When I was a lawyer, before I became a judge, I worked
> with Andrew Lelling, the Assistant United States Attorney.  We
> worked together at the Boston law firm of Goodwin, Procter for a
> period of about four years or so ending, I believe, in early 2001.  I

was a partner at the firm, and he was an associate . . . . [W]e had a
relationship that was friendly, although I would not say that we were
good friends. [1]

(Docket No. 424-2 at 5).  Both defense counsel and Morfin-Rodriguez were offered the

opportunity "express any problem with [the Court] continuing . . . to preside over th[e] change of

plea and sentencing." (*Id.* at 6.)  Each stated expressly that he had no problem. (*Id.*)

The Court then inquired whether Morfin-Rodriguez was "completely satisfied with the

[c]ounsel, representation, and advice given . . . in this case by [his] attorney," and he answered

that he was. (*Id.* at 7.)  The Court inquired whether Morfin-Rodriguez understood the terms of

the plea agreement, and he indicated that he did. (*Id.* at 9.)  Because count one of the

indictment—the conspiracy count—involved at least 1,000 kilograms of a substance containing

marijuana, Morfin-Rodriguez was subject to a mandatory minimum ten-year minimum sentence

pursuant to 21 U.S.C. § 841(b)(1)(A).  The Government informed him of that mandatory

minimum sentence, and the Court asked:  "Do you understand that I have the power to sentence

you up to life in prison?" (*Id.* at 11.)  Morfin-Rodriguez answered "[y]es." (*Id.*)

The Court also inquired whether Morfin-Rodriguez understood the scope of his waiver of

appeal and collateral challenge.  It asked, "do you understand that you have . . . waived in part

your right to challenge any sentence I impose in the future," and Morfin-Rodriguez answered

"[y]es." (*Id.* at 15.)  The Court then asked, more specifically: "[I]n particular, do you understand

that you have agreed that you will not appeal or challenge any sentence I impose that is 168

months or less?"  Again Morfin-Rodriguez answered "[y]es." (*Id.*)

---

[1]  Prior to the Rule 11 conference, proceedings in this case as to Morfin-Rodriguez were handled by
Magistrate Judges Swartwood and Hillman.

Morfin-Rodriguez's sentencing hearing was held on January 12, 2007.  The parties stipulated in the plea agreement that he was subject to a four-level enhancement for playing a leadership role in the offense, *see* U.S.S.G. § 3B1.1(a), and they reaffirmed that position at sentencing.  (*See* Docket No. 424-4 at 6; *see also id.* at 8 (defense counsel stating that "my client had, if you will, a somewhat supervisory role, which he has acknowledged")).  Defense counsel advocated for the mandatory minimum sentence of 120 months.  The Court imposed a 135-month sentence, noting that Morfin-Rodriguez "ran the day-to-day operations of a major drug trafficking organization."  (*Id.* at 16).

Morfin-Rodriguez, acting *pro se*, entered a notice of appeal in this Court on January 22, 2007.  (*See* Docket No. 306).  His appellate counsel submitted a brief to the First Circuit pursuant to *Anders v. California*, 386 U.S. 738 (1967), stating that all potential claims of error were frivolous.  The First Circuit then invited Morfin-Rodriguez to file a *pro se* submission, which he did.  On February 27, 2008, the First Circuit entered a unpublished order affirming his conviction and sentence, stating "[t]he arguments proffered by appellant in his *pro se* supplemental brief are not supported by the governing precedents or by the record."  (*See* First Circuit Docket 07-1203).  Morfin-Rodriguez filed the present petition on September 10, 2008, within the one-year statute of limitations imposed by 28 U.S.C. § 2255(f).

## II.   Analysis

### A.   Standard of Review

Under 28 U.S.C. § 2255, a prisoner in custody pursuant to a sentence imposed by a federal court may file a motion to vacate, set aside, or correct a sentence "on the ground that the court . . . imposed the sentence in violation of federal law (including, of course, the

Constitution)." *Ellis v. United States*, 313 F.3d 636, 641 (1st Cir. 2002); *see id.* ("In essence,

then, section 2255 is a surrogate for the historic writ of habeas corpus").

Section 2255 provides for post-conviction relief "only when the petitioner has

demonstrated that his sentence '(1) was imposed in violation of the constitution, or (2) was

imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was

otherwise subject to collateral attack.'" *Moreno-Morales v. United States*, 334 F.3d 140, 148 (1st

Cir. 2003) (quoting *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998)).  "The catch-all

fourth category includes only assignments of error that reveal 'fundamental defect[s]' which, if

uncorrected, will 'result[ ] in a complete miscarriage of justice,' or irregularities that are

'inconsistent with the rudimentary demands of fair procedure.'" *David*, 134 F.3d at 470 (quoting

*Hill v. United States*, 368 U.S. 424, 427-28 (1962)).

### B.      Ineffective Assistance of Counsel Claims

Morfin-Rodriguez contends that his counsel's ineffective assistance infected his plea

agreement and the Rule 11 conference, and that accordingly his guilty plea should be partially

vacated.  Because those claims address the viability of his guilty plea, rather than the

appropriateness of his sentence, they are not subject to the waiver of collateral review.

"When a criminal defendant has solemnly admitted in open court that he is in fact guilty of

the offense with which he is charged, he may not thereafter raise independent claims relating to

the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may

only attack the voluntary and intelligent character of the guilty plea by showing that the advice he

received from counsel was [substandard]." *Tollet v. Henderson*, 411 U.S. 258, 267 (1976); *see*

*Mabry v. Johnson*, 467 U.S. 504, 508 (1984), *abrogated on other grounds by Puckett v. United*

*States*, — U.S. —, 129 S.Ct. 1423, 1430 n.1 (2009) ("It is well settled that a voluntary and intelligent plea of guilty made by an accused person, who has been advised by competent counsel, may not be collaterally attacked").

The two-part test of *Strickland v. Washington*, 466 U.S. 668, 687-89 (1984), "applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 57 (1985). First, "defendant must show that counsel's representation fell below an objective standard of reasonableness" under the circumstances. *See Strickland*, 466 U.S. at 688. Counsel "has wide latitude in deciding how best to represent a client, and benefits from a strong presumption that he . . . rendered adequate assistance." *Sleeper v. Spencer*, 510 F.3d 32, 39 (1st Cir. 2007) (quotation marks and citation omitted). Second, to demonstrate prejudice in the context of a guilty plea, petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 57. "For purposes of this standard, a reasonable probability is a probability sufficient to undermine confidence in a belief that the petitioner would have entered a plea." *Ferrara v. United States*, 456 F.3d 278, 294 (1st Cir. 2006); *see United States v. Isom*, 85 F.3d 831, 837 (1st Cir. 1996) (prejudice requires demonstration that petitioner "was induced to enter [a] guilty plea[] which he otherwise would not have entered").

### 1.   Court's Allegedly Coercive Role

Petitioner alleges that the Court involved itself in the parties' plea negotiations in violation of Fed. R. Crim. P. 11(c)(1), and implies that the involvement infringed on his Fifth Amendment right to due process and his Sixth Amendment right to a trial by jury. In support of that allegation, Morfin-Rodriguez points only to one question asked during the plea

colloquy—specifically, the Court asked him whether he "underst[ood] that [it] ha[d] the power to sentence [him] up to life in prison." Petitioner contends that the question was an implied threat concerning the potential consequences of asserting his right to trial. He further contends that his counsel acted unreasonably in failing to object.

Petitioner is correct that "when a trial judge threatens a defendant with a higher sentence if he pursues his right to a trial instead of pleading guilty, a defendant's plea must be vacated." *United States v. Bierd*, 217 F.3d 15, 19 (1st Cir. 2000). That is not, however, what occurred here. The Court was simply following the directive of Rule 11(b)(1)(H), which *requires* it to inform a defendant of "any maximum possible penalty, including imprisonment" before "accept[ing] a plea of guilty." "'The rule against judicial participation in plea bargaining protects the parties against implicit or explicit pressure to settle criminal cases on terms favored by the judge.'" *Bierd*, 217 F.3d at 21 (quoting *United States v. Frank*, 36 F.3d 898, 903 (9th Cir.1994)). Here, neither implicit nor explicit pressure was applied when the Court informed Morfin-Rodriguez of the penalties he was facing. Rule 11(c)(1) cannot, and does not, prohibit the Court from complying with Rule 11(b)(1)(H), and it was not ineffective for counsel to forgo an argument to the contrary. Indeed, as the Government points out, had the Court *failed* to inform petitioner of the maximum possible period of imprisonment, the guilty plea would be subject to a collateral attack on that ground. *Cf. Hanna v. United States*, 50 F.3d 1 (1st Cir. 1995) (Table) (considering that very argument, but finding no plain error).

## 2.   Failure to Object to Alleged Conflict of Interest

Petitioner contends that his counsel's failure to object to the Court's prior professional relationship with the Assistant United States Attorney assigned to the case, and his failure to seek

recusal, amounted to ineffective assistance.  Title 28 U.S.C. § 455(a) provides that a judge "shall disqualify himself in any proceeding in which his impartiality might reasonable be questioned." The statute then enumerates conflicts of interest that require recusal, one of which refers to prior professional associations but is inapplicable here.  *See id.*, § 455(b)(2) ("He shall . . . disqualify himself . . . [w]here . . . a lawyer with whom he previously practiced law *served during such association as a lawyer concerning the matter*" (emphasis added)).

Where defense counsel seeks recusal under 28 U.S.C. § 455(a), as Morfin-Rodriguez argues his counsel should have done, he must point to"facts [that] provide what an objective, knowledgeable member of the public would find to be a reasonable basis for doubting the judge's impartiality."  *In re United States*, 666 F.2d 690, 695 (1st Cir. 1981).  Where the asserted ground for that recusal is the Court's prior relationship with opposing counsel, the "two-part test for whether a judge should disqualify himself" is straightforward:  "whether the judge feels capable of disregarding the relationship and whether others can reasonably be expected to believe that the relationship is disregarded."  *United States v. Mendoza*, 468 F.3d 1256, 1262 (10th Cir. 2006) (quotation marks and citation omitted).  The Court is afforded "a range of discretion" in applying that test.  *In re United States*, 666 F.2d at 694.

Here recusal, even if requested, was not warranted.  The Court had previously worked with the Assistant United States Attorney, but as it expressed at the time, the relationship did not extend past co-worker collegiality.  *Cf. United States v. Murphy*, 768 F.2d 1518, 1537 (7th Cir. 1985) ("a judge need not disqualify himself just because a friend—even a close friend—appears as a lawyer"); *cf. id.* (collecting cases).  That connection is simply "too tenuous . . . for a reasonable person to question" the Court's impartiality.  *See Mendoza*, 468 F.3d at 1262; *see also United*

*States v. Hollister*, 746 F.2d 420, 425 (8th Cir. 1984) (holding that judge need not recuse himself where prosecutor was his former law clerk); *United States v. Miller*, 221 Fed. Appx. 182, 185 (4th Cir., March 8, 2007) (unpublished) ("the mere facts of [the] Judge['s] . . . government service and private association with an AUSA who worked on this matter are insufficient to justify his recusal"). Thus, petitioner cannot demonstrate deficient representation *or* prejudice, as any recusal motion would not have been granted. He likewise has failed to establish that the Court's alleged conflict of interest caused his guilty plea to be unknowing or involuntary. *Contra Castillo v. Matesanz*, 348 F.3d 1, 11 (1st Cir. 2003) ("the petitioner must carry the devoir of persuasion and prove that he was prejudiced, i.e. that his attorney's parlous conduct may have altered the outcome of the case" (quotation marks and citation omitted)).

### 3.   Misrepresentation of Sentence

Morfin-Rodriguez further alleges that counsel instructed him that if he answered "yes" to the Court's questions at the Rule 11 hearing, he would receive a ten-year sentence. Even assuming his allegation is true—thereby ignoring his testimony at the Rule 11 hearing (*see* Docket No. 424-2 at 9)—he cannot establish prejudice. Simply stated, "an inaccurate prediction about sentencing [prior to a guilty plea] will generally not alone be sufficient to sustain a claim of ineffective assistance of counsel." *Knight v. United States*, 37 F.3d 769, 775 (1st Cir. 1995); *see Calabrese v. United States*, 507 F.2d 259, 260 (1st Cir. 1974) ("Generally the imposition of a sentence greater than that expected by a defendant, or predicted by his counsel is not adequate grounds for vacating the sentence under 28 U.S.C.A. § 2255").

### 4.   Stipulation to Leadership Role Enhancement

Petitioner asserts that counsel acted unreasonably by stipulating to a four-level leadership

role enhancement under U.S.S.G. § 3B1.1(a) in the plea agreement because, absent that
stipulation, the Government would have been required to prove the applicability of the
enhancement to a jury beyond a reasonable doubt.  Petitioner's argument in that regard contains
numerous flaws, most prominently a misunderstanding of the respective roles of the judge and
jury.  As the First Circuit stated in *United States v. Jimenez-Beltre*, "the district court will [first] .
. . calculate the applicable guidelines range including the resolution of any factual or legal disputes
necessary to that calculation . . . before deciding whether to exercise its new-found discretion to
impose a non-guidelines sentence."  440 F.3d 514, 518 (1st Cir. 2006) (*en banc*).  "Post-*Booker* .
. . the sentencing court," and not the jury, retains the responsibility "to determine by a
preponderance of the evidence" whether a specific offense characteristic enhancement is justified.
*United States v. Gobi*, 471 F.3d 302, 314 (1st Cir. 2006).

Furthermore, the application of the four-level enhancement was unquestionably warranted,
as demonstrated by the petitioner's own admission at his Rule 11 conference.[2]  There, the
Government described Morfin-Rodriguez's conduct, stating that petitioner "organized and led a
drug trafficking organization," including "arraing[ing] numerous cocaine and maijuana
transactions with [his] own suppliers and with mid-level dealers."  (Docket No. 424-2 at 19).  The
conspiracy that Morfin-Rodriguez "organized" involved fourteen members, eight of whom the
Government expressly named.  (*Id.*)  When the Court asked whether petitioner "agree[d] with the

---

[2] "The guideline commentary provides a non-exhaustive list of factors for courts to consider when making
the status determination. U.S.S.G. § 3B1.1(a) application note 4. These factors include: (1) the exercise of
decision-making authority; (2) the nature of participation in the commission of the offense; (3) the recruitment of
accomplices; (4) the claimed right to a larger share of the fruits of the crime; (5) the degree of participation in
planning or organizing the offense; (6) the nature and scope of the illegal activity; and (7) the degree of control
and authority exercised over others. *Id.*  There need not be proof of each and every factor before a defendant can be
termed an organizer or leader."  *United States v. Rivera Calderon*, 578 F.3d 78, 103 (1st Cir. 2009).

[G]overnment's statement of facts," he responded "[y]es."  (*Id.* at 20).  Simply put, Morfin Rodriguez cannot demonstrate that had counsel challenged the application of the four-level leadership role enhancement, "the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

### C.   Sentencing Claims

Finally, Morfin-Rodriguez asserts that the Court erred by viewing the Guidelines as mandatory, despite clear evidence to the contrary.  (*See* Docket No. 424-4 at 6 (Court stating "[o]bviously, the [G]uidelines are advisory, not mandatory, and the parities are free to structure their [sentencing] arguments in any way they wish"); *id.* at 16 (Court referencing the personal characteristics of defendant, but stating that "the fact here [is] that . . . . he ran the day-to-day operations of a major drug trafficking organization" and that fact warranted the "guideline sentence")).  In any event, his plea agreement expressly waived collateral review of any sentence less than 168 months.

A waiver of the right to raise a collateral challenge to a sentence is valid if (1) the plea agreement "contains a clear statement elucidating the waiver and delineating its scope;" (2) the waiver has been adequately discussed during the plea hearing "to ensure that the defendant freely and intelligently agreed to" the waiver; and (3) the waiver does not constitute a "miscarriage of justice." *United States v. Ciampi*, 419 F.3d 20, 25 (1st Cir.2005) (quoting *United States v. Teeter*, 257 F.3d 14, 24 (1st Cir.2001)).  There is no question regarding the first requirement, as the plea agreement states, "Defendant agrees that he will not . . . collaterally challenge any imprisonment sentence of 168 months or less."  (Docket No. 424-3 at 4).  The second requirement is met where the Court's "interrogation [is] specific enough to confirm the

defendant's understanding of the waiver and [his] acquiescence in the relinquishment of rights that it betokens." *Ciampi*, 419 F.3d at 25.  Here, the Court asked Morfin-Rodriguez, "in particular, do you understand that you have agreed that you will not appeal or challenge any sentence . . . that is 168 months or less," (*id.* at 15), and he responded that he did.  That inquiry is undoubtedly sufficient.  *See Ciampi*, 419 F.3d at 26 (holding that a general inquiry as to whether defendant understood the terms of the plea agreement was sufficient to establish a knowing waiver of appellate rights).

The waiver will therefore be enforced unless it works a miscarriage of justice, which "requires a strong showing of innocence, unfairness, or the like."  *United States v. Cardona-Diaz*, 524 F.3d 20, 28 (1st Cir. 2008).   "When mulling whether a miscarriage of justice is in prospect, [the Court] considers, among other things, the clarity of the alleged error, its character and gravity, its impact on the defendant, any possible prejudice to the government, and the extent to which the defendant acquiesced in the result."  *Id.* (quotation marks and citation omitted).  Here, there was no error, let alone a miscarriage of justice.

**III.**   **Conclusion**

For the foregoing reasons, the motion of Gilberto Morfin-Rodriguez to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor IV
United States District Judge

Dated: December 2, 2009

13